# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

STEVEN HAROLD MCRORIE,

   Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 330576
Delta Circuit Court
LC No. 14-009021-FC

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

   Defendant was convicted by a jury of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), (2)(b), and was acquitted of another count of CSC-I. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 25 to 40 years in prison. On appeal, defendant argues that the prosecutor made several comments that constituted misconduct, and that the trial court abused its discretion by denying his request for a jury instruction on second-degree criminal sexual conduct (CSC-II), a cognate offense. We affirm.

## I. PROSECUTORIAL ERROR[1]

---

[1] Although this type of claim is generally referred to as "prosecutorial misconduct," this Court has stated that, "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted). Nevertheless, regardless of "what operative phrase is used, [this Court] must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id*. at 88, citing *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Here, we will refer to defendant's claim as prosecutorial error, as the argument is limited to technical errors by the prosecutor.

Defendant first argues that comments made by the prosecutor during his closing and rebuttal arguments were improper because they denigrated the defense and argued facts not based on evidence. Further, according to defendant, the comments prejudiced him by vouching for the complainant's credibility while suggesting that defendant and the defense were not credible. Trial counsel did not object to any of the cited comments, which defendant argues constituted ineffective assistance of counsel. We conclude that, when considered in context, the prosecutor's comments were not improper, and that defense counsel was not ineffective for failing to object to them.

A prosecutor may not vouch for the credibility of a witness. *People v Reed*, 449 Mich 375, 398; 535 NW2d 496 (1995) (opinion by BOYLE, J.). However, the prosecutor's comments must be read as a whole and "evaluated in light of the relationship or lack of relationship they bear to the evidence admitted at trial." *Id.* at 398-399 (citation and quotation marks omitted). Our review of the prosecutor's comments does not turn on whether any "magic words" were used: "The crucial inquiry is not whether the prosecutor said 'We know' or 'I know' or 'I believe,' but rather whether the prosecutor was attempting to vouch for the defendant's guilt." *Id.* at 399. Additionally, prosecutors should refrain from making arguments that appeal to the jury's civic duty, and "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). Any such comments made during closing argument will be reviewed in context "to determine whether they constitute error requiring reversal." *Id.* at 283.

Defendant first argues that the following comment constituted improper vouching for the complainant's credibility:

> Over the last couple of days, you've heard about real world criminal sexual conduct against children. This isn't a case where a stranger pulls up in a van with no windows to a playground and asks some random kids, 'Do you want some candy?' You've heard about real world criminal sexual conduct against children.

We do not view this statement as a reference to the complainant's credibility, but rather as a comment on the nature of the facts presented. The prosecutor essentially argued that while a stereotypical version of a sexual assault against a child might involve the stranger on the playground, in the instant case the complainant had testified that someone she knew had assaulted her—or, as the prosecutor put it, "[a] person of trust and authority over a child violat[ed] that very sacred bond." In other words, the prosecutor was suggesting that sexual assault of children does not necessarily occur at the hands of strangers, but is more likely to be perpetrated by a person the child knows, and that the complainant's actions made sense in light of this fact. Additionally, the prosecutor presented an expert forensic interviewer who testified that children often delay disclosure when the person who abused them was a loved one or family member. When viewed in context of the evidence and arguments presented at trial, the prosecutor's assertion that the case concerned a "real world" sexual assault, and by extension, that the complainant's behavior should be understood in this context, was not improper.

Similarly, the prosecutor did not improperly vouch for the complainant's credibility when he stated:

> Why you should believe [C.G.]. First of all, she's 14 years old. . . .
> [W]hat do your kids lie about? . . . [D]oing their homework . . . you know, who
> you were with? . . . And those are things that 14 year old girls . . . do, right? . . .
> Common sense. Does your common sense tell you that 14 year old girls make up
> allegations of criminal sexual conduct against a person they love?

These statements were based on evidence admitted at trial. The complainant's mother testified that the complainant had lied about small things, such as whether she had completed her homework; thus, the prosecutor apparently sought to reframe this testimony. Additionally, the prosecutor's use of the word "believe" did not automatically indicate improper vouching. *Reed*, 449 Mich at 399 (opinion by BOYLE, J.). Notably, the prosecutor did not state that "he believed" the complainant, but rather that he intended to explain to the jury why *they* "should believe" the complainant. Pursuant to *Reed*, this was not improper vouching.

Next, defendant argues that the prosecutor disparaged the defense when he stated: "We're not in the business of fabricating eyewitnesses or calling people that don't offer additional help to jurors."[2] Defendant maintains that this comment implied that the defense *was* in "the business" of fabricating witnesses or evidence. However, the record shows that the prosecutor's comments were a permissible response to arguments raised by the defense. Defense counsel asserted during his closing argument that the prosecution had failed to present key witnesses, including the friend to whom the complainant sent text messages initially disclosing the assaults, and defendant's daughter, who defense counsel said was the first person the complainant had told "in person" about the assaults. Defense counsel argued that the absence of these witnesses created sufficient reasonable doubt to acquit defendant of the charges. On rebuttal, the prosecutor asserted that the prosecution had "called the witnesses that were eyewitnesses in this," not those "that don't offer additional help to jurors." These comments did not suggest that the defense had fabricated evidence or witnesses. Rather, they represented an appropriate response to defense counsel's argument that the absence of the "witnesses" created sufficient reasonable doubt to acquit defendant of the charges.

Defendant also asserts that the prosecution improperly appealed to the jury's sympathy and civic duty by stating:

> If you want to talk about fundamental rights, how about the right to be free
> from criminal activity against your person? The protection . . . to walk these
> streets and not be criminal [sic] sexually assaulted while we're behind closed

---

[2] Regarding the comment that "[a] common strategy by defense attorneys is, let's point out a child's inconsistent statements . . . but not talk about the defendant's," defendant does not explain how this was improper, but may be implying that it disparaged the defense. "[P]rosecutor[s] may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). However, this was a comment on defense counsel's argument; we see no evidence that it was designed to disparage the defense.

doors in our own home when we're children. How about protecting our children from crimes?

We disagree with defendant's characterization that this was a request to convict defendant in order to protect children. Here again, we conclude that the comments were a reasonable response to defense counsel's arguments. Defense counsel argued that "[w]e will all be celebrating Independence Day this weekend, . . . and we celebrate the freedoms that we all enjoy and that we all are entitled to," including the right to "the presumption of innocence maintained unless there's proof beyond a reasonable doubt." In rebuttal argument, the prosecutor made the above comments. When considered in context, these comments were not an improper appeal to the jury's sympathy or civic duty, but rather a response to defense counsel's argument regarding the "freedoms" to which persons are entitled in the United States. Thus, the prosecutor's comments were not error. See *Bahoda*, 448 Mich at 282-283; *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996) (holding that "an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument").

Finally, defendant takes issue with the following:

Maybe most importantly, he's gotten away with it before. He actually got away with it three times for a long period of time. The incident with [N.L.], he got a pass. She didn't report it to the police.

\* \* \*

Why did [complainant] do what she did? She's a victim of criminal sexual conduct, and it was at the hands of the defendant, just like [N.L.] was. He got away with it with [N.L.], don't let that happen today. The facts and the evidence prove that he's guilty beyond a reasonable doubt.

We conclude that these comments were a permissible reference to the evidence of defendant's prior sexual misconduct, admitted at trial pursuant to MCL 768.27a. In *People v Watkins*, 491 Mich 450, 476; 818 NW2d 296 (2012), the Michigan Supreme Court held that MCL 768.27a "reflects a substantive legislative determination that juries should be privy to a defendant's behavioral history in cases charging the defendant with sexual misconduct against a minor." The prosecutor's comment was part of a proper summary of the prosecution's presentation of the case, which included N.L.'s testimony that defendant had sexually assaulted her and that the alleged assaults were not reported to law enforcement. The comments were not, as defendant contends, an encouragement to the jury to convict defendant because defendant had allegedly assaulted N.L. and had never been punished for it. Thus, these comments were not error.

Because the prosecutor's statements were not error, defendant's argument that trial counsel was ineffective for failing to preserve this issue by timely objecting to the prosecutor's statements is not persuasive. See *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991) (defense counsel was not ineffective for failing to object where an objection would have been pointless).

-4-

## II. JURY INSTRUCTIONS

Defense counsel requested, at trial, a jury instruction on CSC-II. According to the defense, the instruction was appropriate based on testimony at trial, ostensibly from the investigating detective, that defendant had accidentally touched the complainant on her breast. The trial court declined defense counsel's request because CSC-II was not a lesser included offense of CSC-I, as required by *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002). In addition, the court noted that the touching element was "not really a disputed element in this case here because [complainant did not claim there was a mere touching and] the defendant has said, 'I didn't do it at all.' . . . 'I didn't touch her in any way;' " the court found that the only disputed element was whether the first-degree CSC was "completed." The court also noted that the prosecutor had not charged defendant with touching the complainant's breast, incidentally or purposefully. Thus, because "[t]here was no incidental touching except as it might relate to the breast, and the breast has not been charged," the court concluded that there was no support in the record for an instruction on a lesser offense.

In *Cornell*, the Court held that "a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*. at 357. MCL 768.32(1) provides, in pertinent part, as follows:

> Except as provided in subsection (2)[3], upon an indictment for an offense, consisting of different degrees, . . . the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

The Court stated that pursuant to this interpretation, "the defendant's due process notice rights are not violated because all the elements of the lesser offense have already been alleged by charging the defendant with the greater offense." *Cornell*, 466 Mich at 354-355 (citation and quotation marks omitted).

In *People v Nyx*, 479 Mich 112, 116; 734 NW2d 548 (2007) (opinion by TAYLOR, C.J.), the Court considered whether the prosecutor was entitled to an instruction on sCSC-II when the defendant had been charged with CSC-I. *Nyx*, at 116. The Court concluded that the prosecutor was not entitled to the instruction because "[t]he elements of CSC II are not all subsumed within CSC I;" thus, CSC-II was not a lesser included offense of CSC I and the defendant could not be convicted of CSC-II consistent with MCL 768.32. *Id*. at 117. The *Nyx* Court further stated:

> While the prosecutor need not show that the perpetrator of a sexual penetration had any particular criminal intent in order to obtain a conviction of CSC I, MCL 750.520a(p), CSC II requires proof of one of several intents that are not always

---

[3] Subsection 2 addresses lesser included offenses when a defendant is charged with a controlled substance offense.

present when CSC I is committed[4]. Thus, CSC II is not a necessarily included lesser offense of CSC I. Rather, it is a cognate lesser offense. [*Id.* at 117-118.]

"A cognate lesser offense is one that shares elements with the charged offense but contains at least one element not found in the higher offense." *Id.* at 118 n 14 (citation omitted). Consistent with *Cornell* and other cases, the Court held in *Nyx* that "MCL 768.32(1) precludes a judge or a jury from convicting a defendant of a cognate lesser offense . . . ." *Id.* at 121.

Here, defendant acknowledges that, under *Cornell*, MCL 768.32(1) does not permit cognate offense instructions. *Cornell*, 466 Mich at 359. Defendant does not argue that *Cornell* was incorrectly decided, but argues that this Court should conclude that *Cornell* and *Nyx* do not preclude an instruction on the cognate offense of CSC-II under the "unique circumstances" of this case. The "uniqueness" of defendant's case is apparently the fact that the defense, rather than the prosecution, requested an instruction on a cognate offense. However, defendant has not pointed to any authority that supports his contention that a *defendant* may ask the fact-finder to consider a cognate offense. Certainly, our Supreme Court was concerned with protecting a defendant's right to adequate notice in *Cornell* and *Nyx*, as defendant argues; however, the Court also clearly indicated that its intention was to clarify its interpretation of MCL 768.32(1). See *Id.* at 357 ("We believe that this analysis is consistent with our prior case law and equally applicable to MCL 768.32."); *Nyx*, 479 Mich at 122-123 (opinion by TAYLOR, C.J.) (declining plaintiff's request to hold that instructions on cognate offenses should be given in cases where the Legislature has divided crimes into degrees: "We are persuaded that the bright-line rule of *Cornell*, which simply precludes conviction of cognate lesser offenses no matter the charge, is consistent with MCL 768.32(1) and is thus preferable"). Because defendant's argument that our Supreme Court did not intend for MCL 768.32 to preclude instructions on cognate offenses in cases where the instruction was requested by the defense is not supported by relevant authority, he was not entitled to an instruction on CSC-II.

Defendant also argues that application of *Cornell* and *Nyx* to the instant case prevented him from presenting his preferred defense, in violation of his constitutional rights. We note that a defendant's right to present a defense is not unlimited, and are not persuaded that the trial court's decision was in error. "It is well established that the right to assert a defense may be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Shahideh*, 482 Mich 1156, 1164 n 15 (2008) (TAYLOR, C.J., concurring), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). The Court's decision in *Cornell* was designed to promote reliability in the interpretation of MCL 768.32(1), as well as fairness in the application of the rule in various criminal cases. Moreover, defendant's right to present the defense he now asserts was

---

[4] In order to prove that a defendant has committed CSC-II, a prosecutor must show that the defendant had sexual contact with the victim. MCL 750.520c(1)(a), (b)(*i*). Sexual contact includes, *inter alia*, "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts." MCL 750.520a(q).

not impeded by the court's decision.  Defendant was still free to argue that he had accidentally touched the complainant on her breast.  Had the jury believed this argument, defendant would presumably have been acquitted of CSC-I, which would have been a more desirable result for him than a conviction for CSC-II.  Defendant is not entitled to reversal.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher